Filed 8/12/15  In re Jesus S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JESUS S., JR., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JESUS S., JR., <br><br> Defendant and Appellant. | F070395 <br><br> (Super. Ct. No. 513133) <br><br> **OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Valli Israels, Judge.

Caitlin U. Christian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Kane, Acting P.J., Detjen, J. and Smith, J.

**INTRODUCTION**

Appellant Jesus S., Jr., was the subject of a Welfare and Institutions Code section 602[1] petition. The juvenile court found that the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1900 et seq.) did not apply and removed Jesus from his father's care, delegating to the probation department the selection of an appropriate placement.

Jesus contends, and the People concede, the delegation of authority over the selection of an appropriate placement was unauthorized. Jesus also contends the juvenile court failed to comply with ICWA before ordering an out-of-home placement. We agree.

**FACTUAL AND PROCEDURAL SUMMARY**

On October 11, 2012, Jesus's father (father) filed Judicial Council form ICWA-020 stating that he (father) "may have Indian ancestry" and that the tribe was "unk." The form specifically states that the form is "not intended to constitute a complete inquiry into Indian heritage." The record does not contain any evidence demonstrating that any further inquiry as to Indian ancestry, or notice to any tribe or the Bureau of Indian Affairs (BIA), was made.

On October 18, 2012, after Jesus admitted to committing a misdemeanor burglary in Stanislaus County, his case was transferred to Alameda County. On November 9, 2012, he admitted to committing a felony burglary in Alameda County. The case was then transferred back to Stanislaus County, where Jesus resided, for disposition on both petitions.

On December 11, 2012, Jesus was adjudged a ward of the juvenile court pursuant to section 602 and placed on probation.

On three occasions (February 2013 and February and June 2014) Jesus admitted to violations of probation and his wardship was continued. His violations included truancy,

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

drug use, and failure to report to his probation officer. On September 11, 2014, another petition was filed alleging Jesus again had violated probation by failing to report to his probation officer as directed for July, August, and September 2014 and by failing to attend school.

On October 8, 2014, the juvenile court continued Jesus as a ward of the court, continued him on probation, and removed him from his father's care, pursuant to section 727, subdivision (a). The juvenile court ordered Jesus be placed in out-of-home care. A prepermanency status review hearing was scheduled for February 25, 2015, and a permanency planning hearing was scheduled for October 8, 2015.

Also at the October 8, 2014, hearing, the juvenile court found that ICWA did not apply.

On October 23, 2014, the probation office filed a report stating that placement was pending. Jesus had been referred to Tahoe Turning Point and the probation office was waiting for the outcome of Jesus's interview. The juvenile court continued the hearing on placement review to November 7, 2014, stating, "You will or will not be here at the next hearing, depending on whether you're placed."

Jesus filed his appeal on October 28, 2014.

## DISCUSSION

Jesus contends the juvenile court's order directing the probation department to select his placement constituted an unauthorized delegation of authority. He also contends the juvenile court erred in finding that ICWA notice requirements had been satisfied.

## I.     Out-of-Home Placement

Jesus contends the juvenile court's order directing the probation department to select a suitable out-of-home placement for him was an unauthorized delegation of authority. The People concede the issue.

3.

The juvenile court ordered Jesus removed from the custody of his father, effective as of the hearing date of October 8, 2014, and placed in "suitable out-of-home placement" pursuant to section 727, subdivision (a). The probation department was ordered to select "the placement setting that is the least restrictive or most family like, the most appropriate available in close proximity to the parents' home, the environment best suited to the minor's special needs and interests." The juvenile court further specified that placement options should first be with "suitable relatives," followed in order of preference by tribal members, foster care, group care, and residential treatment. Jesus was ordered detained in juvenile hall until the probation department selected a suitable placement.

A placement decision is "particularly fact intensive and requires a fully informed analysis by the juvenile court of the minor's needs and the programs' services." (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1291.) Consequently, the juvenile court may not delegate to the probation department the authority and discretion to select a minor's placement. (*In re Debra A.* (1975) 48 Cal.App.3d 327, 330.)

The October 8, 2014, order itself, paragraph 6 on page 4 of the standard form order, specifies that "additional placement findings and orders must be attached" if out-of-home placement is ordered. No documents were attached.

The matter must be remanded for the juvenile court to determine an appropriate placement.

## II. ICWA Compliance

Jesus contends the juvenile court erred by failing to comply with ICWA requirements before setting a permanency planning hearing and ordering an out-of-home placement. The People contend ICWA does not apply or that insufficient information was provided to trigger ICWA notice requirements. We conclude the issue cannot be fully resolved based on the record before us and will need to be addressed on remand.

4.

Judicial Council form ICWA-020 was filed on October 11, 2012, stating that father "may have Indian ancestry" and that the tribe was "unk." The form specifically states that the form is "not intended to constitute a complete inquiry into Indian heritage." The record does not contain any evidence demonstrating that any further inquiry as to Indian ancestry, or notice to any tribe, the BIA, or the Secretary of the Interior, was made.

Subsequently, when the juvenile court ordered the probation department to select an appropriate out-of-home placement at the October 8, 2014, hearing, the juvenile court specifically stated that the probation department should consider placement with tribal members. Yet, a few moments later, the juvenile court found that ICWA did not apply.

ICWA does not apply in most juvenile delinquency cases. (*In re W.B.* (2012) 55 Cal.4th 30, 47 (*W.B.*).) When applicable, ICWA imposes notice, procedural rules, and enforcement requirements. (*W.B.* at p. 48.) With respect to notice, if the identity or location of a minor's tribe cannot be determined, then notice is to be given to the BIA. (*Ibid.*) After notice has been given, a minor's tribe has the right to intervene in proceedings. (*Id.* at pp. 48-49.) ICWA imposes various procedural and substantive requirements on state court proceedings. (*W.B.* at p. 49.)

The guidelines published by the BIA to guide state courts in properly implementing ICWA state that "'most juvenile delinquency proceedings are not covered'" by ICWA. (*W.B.*, *supra*, 55 Cal.4th at p. 50.) There are exceptions, however, and, according to ICWA guidelines, ICWA applies to "'status offenses, such as truancy and incorrigibility, which can only be committed by children, and to any juvenile delinquency proceeding that results in the termination of a parental relationship.'" (*W.B.* at p. 50.)

Section 224.3, subdivision (a) provides that a juvenile court and the probation department have an affirmative and continuing duty to inquire whether a minor subject to a section 601 or 602 petition and under a juvenile warship is an Indian child if that minor

5.

is at risk of entering foster care or is in foster care. (*W.B., supra,* 55 Cal.4th at p. 53.) Reading section 224.3, subdivision (a), together with ICWA provisions, it follows that there is "no duty of notice, or any other ICWA procedures, in most delinquency cases alleging adult criminal conduct." (*W.B.,* at p. 54.) "A narrow exception applies when the court decides to place a delinquent ward outside the home for reasons *other than* the ward's criminal conduct." (*Ibid.*) As the California Supreme Court summarized in *W.B.*:

> "In all juvenile delinquency proceedings, including those alleging adult criminal conduct, the court and the probation department have a duty to *inquire* about Indian status as soon as they determine that the child is in foster care or is at risk of entering foster care due to conditions in the child's home. [Citation.] *Notice* pursuant to ICWA is generally *not* required in a delinquency proceeding premised on conduct that would be criminal if committed by an adult. However, if at the disposition stage or at any point in the proceedings, the court contemplates removing an Indian child from the parental home based on concerns about harmful conditions in the home, and *not* based on the need for rehabilitation or other concerns related to the child's criminal conduct, notice is required and all other ICWA procedures must be followed." (*Id.* at p. 55.)

Here, Jesus's probation violations that triggered the hearing leading to out-of-home placement were truancy and failure to report to the probation officer. In ordering out-of-home placement, the juvenile court found: "The parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor." The juvenile court also found: "The minor has been tried on probation and has failed to reform. The welfare of the minor requires that custody be taken from the minor's parent or guardian." When addressing Jesus, the juvenile court stated, "this is not a punishment," and further stated it would allow Jesus to be in a "stable place." The juvenile court noted that with an out-of-home placement, Jesus would not have "to be worried about where [his] next meal is coming from," or the "housing situation," or "any of that."

The juvenile court's findings seem to indicate that out-of-home placement was ordered based entirely upon conditions in the home and incorrigibility, which would require all ICWA procedures be followed. (*W.B.*, *supra*, 55 Cal.4th at pp. 55, 59.) If this was the case, the record before us did not disclose substantial evidence supporting the juvenile court's finding that ICWA did not apply. (*In re E.W.* (2009) 170 Cal.App.4th 396, 403-404.)

At a minimum, the probation department would have to interview Jesus's family members (§ 224.3, subd. (c)) in order to prepare a notice that included all of the required information (§ 224.2, subd. (a)(5)). Both state and federal law requires the probation department to attempt to obtain information about Jesus's biological family, including parents, grandparents, and great-grandparents, in order to include this information on notices sent to determine if Jesus was in fact an Indian child. (§ 224.2, subd. (a)(5)(C); 25 C.F.R. § 23.11.) Indian status need not be certain in order to invoke the duty to inquire and give notice. (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 471.)

Documentation needs to be filed with the juvenile court evidencing efforts to determine Jesus's Indian status and of notices to potential tribes, the BIA, and/or the Secretary of the Interior. (§ 224.2, subds. (a), (c); 25 U.S.C. §§ 1912(a), 1913.) The Judicial Council promulgates standard forms to facilitate the inquiry and notice requirements. (See, e.g., Judicial Council form ICWA-030.)

Notice is meaningless if no information or insufficient information is presented to the tribe or the BIA to allow a determination to be made regarding Jesus's Indian status. (*In re S.M.* (2004) 118 Cal.App.4th 1108, 1116.) A deficit notice under ICWA usually is prejudicial. (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1411.)

If, however, out-of-home placement is in fact being based upon conduct committed by Jesus that would be criminal if committed by an adult, and thus ICWA would not apply, this does not appear to be reflected in the juvenile court's comments.

On remand, the juvenile court needs to clarify whether out-of-home placement is being ordered based upon conduct that would be criminal, in which case ICWA would not apply, or, if out-of-home placement is being ordered based upon conditions in the home, then ICWA would apply and proof of compliance with ICWA notice requirements must be filed with the juvenile court.  (§ 224.2, subd. (c); *W.B.*, *supra*, 55 Cal.4th at p. 55.)

## DISPOSITION

The provision of paragraph 6 of the October 8, 2014, terms of probation and order requiring an unspecified out-of-home placement is stricken and the matter is remanded for further proceedings consistent with this opinion.