Filed 7/29/15  In re C.E. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re C. E., a Person Coming Under the Juvenile Court Law. | C077544 |
| THE PEOPLE, | (Super. Ct. No. JV134638) |
| Plaintiff and Respondent, | |
| v. | |
| C. E., | |
| Defendant and Appellant. | |

A petition filed December 26, 2012, pursuant to Welfare and Institutions Code[1] section 602 alleged that C. E., the minor, committed second degree burglary.  The minor admitted a reasonably related allegation of misdemeanor theft.  The court ordered the minor placed on probation subject to certain conditions, including obeying reasonable

---

[1]      Undesignated statutory references are to the Welfare and Institutions Code.

1

directives of parent, and prohibitions from being away from home overnight without permission, from being away from home for more than 48 hours without permission of the probation officer, and going beyond 10 miles from home without the presence of an approved responsible adult.

The minor violated probation several times. The first time, she was adjudged a ward of the court and each time, probation was revoked and reinstated. Eventually, the court ordered the minor placed in a "Level A" placement.

A petition filed July 17, 2014, pursuant to section 777, alleged the minor violated probation by remaining away from her placement for over a month without permission. The minor admitted the allegation. The court revoked and reinstated probation with the added condition that the minor be placed in a "Level B" placement, an out-of-state residential treatment program.

The minor appeals. She contends that the juvenile court abused its discretion in committing her to an out-of-state placement. In the alternative, she contends that counsel rendered ineffective assistance by failing to object to the out-of-state placement. We affirm.

FACTS

On December 22, 2012, the minor and an accomplice stole a pair of boots from a department store. The accomplice removed the price tag and the minor put the boots on her feet. Outside the store, they were caught by a loss prevention officer and gave false names to him as well as to a deputy sheriff.

The minor reported that she followed the rules of the house in which she lived with her mother and other relatives, did chores, and obeyed curfew. She also claimed that her mother-approved friends were good influences and denied associating with gang members. The minor admitted having smoked marijuana but not since August or September 2012 and denied the use of other drugs or alcohol. The minor stated that she was in good physical and mental health. The minor admitted that she had several unexcused absences at the beginning of the school year. She also reportedly had several

detentions and four suspensions in 2012 for failing to attend class, fighting, and disruptive behavior.

The minor's mother reported to the probation officer that the minor had been lying to her over the previous year. The mother tested the minor for drugs and alcohol on a regular basis since May 2012. The mother reported that the minor had received "C" and "D" grades in school.

After her arrest for the department store theft, the minor was released to her mother with a promise to appear at a detention hearing on December 27, 2012. On December 26, 2012, the minor ran away from home and the family of her friend "Stacy" said they would take the minor to Los Angeles with them. On December 28, 2012, the minor was arrested. The minor admitted the theft and was granted probation and released to the care of her mother.

On March 16, 2013, the minor ran away from home. The mother filed a missing person's report and a warrant was issued for her arrest on March 29, 2013. On May 13, 2013, the minor surrendered herself into custody. The minor admitted that she violated probation by leaving home overnight without the permission of her mother. The court adjudged the minor a ward of the court and revoked and reinstated probation, releasing the minor to the care of her mother with 45 days on a home supervision program.

On July 23, 2013, the minor ran away from home. On August 1, 2013, she was found sleeping in a car in front of a house and was arrested pursuant to a warrant. The minor admitted that she violated probation by remaining away from her home for more than 48 hours without permission. The minor told an officer that she did not want to return to her mother's house and if she was returned there, she would run away. If released on an ankle monitor, the minor stated that she would cut off the monitor and run away. The court revoked and reinstated probation, placing the minor in the care of her grandmother with 27 days in juvenile hall.

On September 27, 2013, the grandmother told the minor that she could attend a party provided that the grandmother chaperoned her. The minor responded that she could leave when she wanted and ran away. The grandmother filed a missing person's report.

3

The minor returned to her grandmother's home on October 10, 2013, and was arrested on a warrant. Thereafter, the minor failed to attend school, failed to return home after school hours, and failed to appear at an October 2013 settlement hearing. She was arrested on a warrant on November 11, 2013. The minor admitted that she violated probation by failing to obey reasonable directives. The court revoked and reinstated probation. The grandmother no longer wanted the minor living with her because the minor refused to follow rules. The minor was returned to the care of her mother on house arrest and 45 days of electronic monitoring.

On April 10, 2014, the minor ran away from home and went to the Bay Area to prostitute herself. The minor returned to the Sacramento area and lived in a motel. The probation officer found online advertisements of the minor relating to prostitution. On April 16, 2014, the minor returned home and tried to flee when sheriff deputies arrived to arrest her pursuant to a warrant. The minor admitted that she violated probation by remaining away from home for more than 48 hours without permission. The court revoked and reinstated probation, committed the minor to juvenile hall for 23 days with credit, and then committed the minor to the probation officer's supervision for suitable "Level A" placement. The minor was placed at the Sacramento Assessment and Treatment Center (SATC) on May 22, 2014. The court ordered the minor to complete a curricula on sexual victimization.

On June 2, 2014, the minor absconded from the "Level A" facility. On July 10, 2014, the minor was shot in the shoulder and leg while partying in an apartment complex parking lot. The minor tried to call her friend "Stacy" to pick her up from the hospital. The minor refused to identify the shooter but disclosed she was shot by a member of her boyfriend's rival gang. The mother reported that the minor had recently almost overdosed on ecstasy and marijuana and that her friends left her for dead in a motel room.

In July 2014, the People filed a violation of probation and motion to modify, change, or set aside the court's previous orders and recommended a "Level B" placement. On July 15, 2014, the minor's attorney appeared with the minor and stated that she was not objecting to a referral to the interagency management authorization

4

committee (committee) and that the minor's mother might be requesting an out-of-state placement, which the People confirmed was their recommendation. The court referred the matter to the committee to evaluate whether the minor should be placed out of state.

After the minor's case was presented to the committee on August 13, 2014, it recommended placement at Forest Ridge Youth Services in Iowa, "a secure treatment facility that can provide a trauma informed approach to treating sexually exploited youth." The probation officer believed that the out-of-state placement was necessary because the minor needed "a more supervised and structured program" and that the distance between Sacramento and Iowa made it "less tempting for her to abscond."

The mother did not object to the committee's recommendation; she was concerned about the safety and decision-making abilities of the minor who would be likely to abscond if placed at an in-state facility due to her ties to the community. The probation officer reported that the minor had not regularly attended school for two years, noting she regularly ran away from home and stayed away for substantial periods of time, living on the streets and prostituting herself. In juvenile hall, the minor refused to attend school on 10 occasions. She also had failed to meet any of her court-ordered obligations.

On August 15, 2014, the minor admitted she violated probation by remaining away from her placement for over a month without permission. Prior to the minor's admission, the minor's attorney stated that the minor was "very reluctant" to be placed out of state and asked the court to consider a "Level A" placement again, noting that the minor was remorseful for absconding and not participating in the prior "Level A" placement, and that the minor felt that she was "amenable to returning to level A placement." The mother stated that she wanted the minor placed "where she can get the help she needs and allow her the opportunity to take it." The People recommended a "Level B" placement.

The court commented, "[w]e had not contemplated this, so I'm going to give the parties an opportunity to object," noting that while in juvenile hall, the minor had been participating in services with U.C. Davis CAARE Center (Davis Center) and that present in the courtroom were both "Ms. Landini and Dr. Liles" who the court planned to hear

5

from absent an objection.  The court asked whether the minor's attorney objected to comments by the Davis Center representatives and she responded, "No."  The prosecutor was asked as well and she had no objection.  Dr. Brandi Liles stated that the minor had "participated in two rounds of the three-week trauma skills group.  She has great participation.  She does her homework, and she has learned some coping skills to help her manage her distress."

Thereafter, the court obtained the minor's admission and asked for any other comments prior to disposition.  Defense counsel had none but the prosecutor suggested new conditions may be required.  The court asked the minor if she had anything to say on her own behalf and she did not.

The court revoked and reinstated probation, placing the minor in an out-of-state residential treatment program.  The court found that the minor had failed to reform during her 19-month probationary period during which she had "received services from NAC, counseling services from River Oak, from ['Level A' placement], from [the Davis Center]," and had participated in "home supervision, electronic monitoring, juvenile work project, and a prior 'level A' or in-state placement."  The court found that in-state facilities were unavailable and inadequate to meet the minor's needs and that placement in Iowa was in the minor's best interest and would not present an undue hardship.

## DISCUSSION

The minor contends the juvenile court abused its discretion in placing her in an out-of-state placement and if deemed forfeited by counsel's failure to object, she argues she was denied the effective assistance of counsel.  The People argue that the failure by the minor's attorney to object to the court's discretionary determination that the minor should be placed in an out-of-state treatment facility forfeits the issue on appeal.  (See *People v. Scott* (1994) 9 Cal.4th 331, 351-352.)

We conclude that the minor's attorney requested another "Level A" placement on behalf of the minor and explained the minor's reasons why she should be given another opportunity.  In arguing that the minor's attorney did not object to the out-of-state placement, the parties misconstrue the record.  The minor erroneously cites the minor's

6

attorney's "No" response to the court's query whether she had any objection to the court entertaining the comments of the Davis Center representatives. The minor argues had her attorney objected, the judge might have considered another in-state placement because Judge Boulware Eurie said, "we had not contemplated *this*," meaning an out-of-state placement. (Italics added.) That is not correct because the People recommended out-of-state placement in its July petition/motion and the parties previously discussed the issue of out-of-state placement before Judge Steven Lapham who referred the minor's case to the committee. "This" meant the parties might want to object to the presence or comments of the Davis Center representatives (one of whom (Dr. Liles) was allowed to speak at the hearing).

The issue is not forfeited. We reject her contention on the merits. A court may not order out-of-state placement unless "[i]n-state facilities or programs have been determined to be unavailable or inadequate to meet the needs of the minor." (§ 727.1, subd. (b)(1).) No abuse of discretion will be found where substantial evidence supports the juvenile court's decision in light of the purposes of juvenile law, which includes the best interests of the child, rehabilitation, the protection and safety of the public, and punishment. (*In re Oscar A.* (2013) 217 Cal.App.4th 750, 755-756; *In re Jose T.* (2010) 191 Cal.App.4th 1142, 1147; *In re S. S.* (1995) 37 Cal.App.4th 543, 550; § 202, subds. (a), (b), (e).)

Substantial evidence supports the juvenile court's decision. The minor had a long history of running away from home and staying away for substantial periods of time. She also absconded from her "Level A" placement. She had ties to individuals in the state who apparently aided and abetted her behavior and sexually exploited her. It was in her best interest to be placed in a more restrictive facility where she would be less likely to run away, where she could receive treatment for her sexual exploitation/victimization, and where she would be secure. (See *In re Eddie M.* (2003) 31 Cal.4th 480, 507.) When the minor absconded from the "Level A" placement, she was shot by a member of her boyfriend's rival gang and had almost overdosed on ecstasy and marijuana. The record

7

does not reflect that the minor had any ties to anyone in Iowa. She would be less likely to run away because she would not have a support system to support her abscond.

The minor complains that a placement in a distant part of California was never considered. The court is not required to place the minor in state even if an in-state facility exists. (*In re Oscar A.*, *supra*, 217 Cal.App.4th at p. 757; compare *In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288-1290.)

The minor contrasts her case with that of the minor in *In re Oscar A.* who also had a history of absconding and who had run away or terminated from four homes and two in-state facilities had denied his acceptance. (*In re Oscar A.*, *supra*, 217 Cal.App.4th at pp. 752-754.) The minor misplaces her reliance upon *In re Oscar A.* because the case does not establish a minimum number of in-state placements before an out-of-state placement can be made. The minor cites *In re Khalid B.* where the ward was immediately sent to an out-of-state placement after admitting he committed involuntary manslaughter. An in-state placement was never tried by probation even though three facilities had been suggested by the minor. (*In re Khalid B.*, *supra*, 233 Cal.App.4th at pp. 1287-1290.) The minor's reliance on *In re Khalid B.* is likewise misplaced. In that case the minor did not have a history of absconding.

The minor argues that in-state placements were not considered or investigated. We disagree. The minor's case covered a 19-month probationary period during which she had received services from multiple agencies "Level A" placement, from the Davis Center, and had participated in home supervision, electronic monitoring, and juvenile work project. The committee concluded a secure out-of-state placement was required. A placement in a more distant part of California would have been inadequate because the minor had ties throughout California, having run away to the Bay Area to prostitute herself on a prior occasion, "Stacy" had planned to assist the minor's abscond to Los Angeles on another occasion, friends with whom she did drugs on another occasion, and gang members with whom she partied on yet another occasion during which she was shot. Substantial evidence supports the juvenile court's finding that in-state facilities

were inadequate or unavailable for the minor's needs and placement out of state was in the minor's best interest.

DISPOSITION

The judgment is affirmed.


      ROBIE      , J.


We concur:


      NICHOLSON      , Acting P. J.


      MURRAY      , J.